**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |  |
|---|---|---|
| SONJA GUENTER, | § § § | |
| *Plaintiff,* | § § | |
| | § | Civil Action No. 1:26-cv-0659 |
| v. | § § | |
| | § | |
| MCDERMOTT WILL & SCHULTE LLP, | § § § | JURY TRIAL DEMANDED |
| | § | |
| *Defendant.* | § § | |

**COMPLAINT**

Plaintiff Sonja Guenter, by and through her attorneys, brings this action against Defendant McDermott Will & Schulte LLP.

After 16 years of exemplary service as a paralegal to the same group of lawyers, who valued her service and professionalism so much that they recruited her to join them through two transitions to new firms, Ms. Guenter was abruptly terminated just months before her 65th birthday.

The decision to terminate Ms. Guenter did not come from the lawyers who knew her work and had built a trusting professional relationship spanning almost two decades. Those lawyers, partners in Defendant's Austin office, continued to give Ms. Guenter stellar qualitative evaluations and had awarded her a raise and a bonus for her continued excellent performance just months before her termination.

1

Rather, the termination decision was made by the firm's paralegal management group, made up of non-lawyers who do not office in Austin and had little familiarity with Ms. Guenter's performance. The decision was not based on Ms. Guenter's professionalism, work ethic, or skill, but on her age. On information and belief, the paralegal management group's termination of Ms. Guenter was based on an obtuse and distant bottom-line theory that more senior paralegals like Ms. Guenter were not worth their senior salary and not able to keep up with evolving legal technologies. Rather than investing in knowing about each individual paralegal and his or her contributions to the firm and the Austin partnership, the firm's non-lawyer managers decided that a younger paralegal made more "business sense" and terminated Ms. Guenter accordingly.

The disconnect between Ms. Guenter's actual performance and management's rigid rule of pushing out senior paralegals was laid bare in Ms. Guenter's 2024 year-end evaluation. In that evaluation, the lawyers who worked with Ms. Guenter every day gave her glowing qualitative evaluations consistent with their high regard for Ms. Guenter over the previous 16 years, and recommended her for both a bonus and a raise. The remote non-lawyer managers, who were responsible for the "quantitative" portion of the evaluation, discordantly and without explanation gave Ms. Guenter low marks. These low "quantitative" evaluations were not explained or supported by any metrics or reasons. The managers merely stamped "2"s on the

2

numerical evaluation fields in complete dissonance to the stellar qualitative evaluations from the lawyers on the ground.

When Ms. Guenter asked for an explanation for these negative numerical scores in her evaluations, the remote non-lawyer managers avoided providing one. Having never been placed on a performance improvement plan or provided any feedback about what supposedly informed the incongruous and unprecedented low scores, the non-lawyer managers fired Ms. Guenter just 3 months after giving her their baseless low scores. They still did not provide any explanation beyond the vague and general word "performance." None of the lawyers who actually worked with Ms. Guenter had ever said anything to support the remote non-lawyer managers' contention that Ms. Guenter's performance was lagging.

Within days of this age-based termination, the non-lawyer managers placed an advertisement online seeking to hire a new experienced IP paralegal—Ms. Guenter's exact position. On information and belief, the person that they ultimately hired to fill the position was younger than Ms. Guenter.

## I. PARTIES

1.      Plaintiff Sonja Guenter ("Plaintiff") is an individual and, at all times relevant to this action, was a resident of Austin, Travis County, Texas. Plaintiff's address is 300 Colorado Street, Suite 2200, Austin, TX 78701. The last three digits of Plaintiff's driver's license number and social security number are not presently known and will be provided as required by law.

3

2. Upon information and belief, Defendant McDermott Will & Schulte LLP ("Defendant") is and has been a limited liability partnership with its principal place of business in Chicago, Illinois. Defendant may be served with process at its business office at 300 Colorado Street, Suite 2200, Austin, TX 78701, or wherever it may be found.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367, as Plaintiff brings claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., and related state law claims under the Texas Commission on Human Rights Act, Tex. Lab. Code § 21.001 et seq. The amount in controversy exceeds $75,000, exclusive of interest and costs.

4. This Court has personal jurisdiction over Defendant McDermott Will & Schulte LLP because Defendant maintains offices and conducts substantial business in the State of Texas, including in Travis County, and the acts and omissions giving rise to Plaintiff's claims occurred in this District and Division. Specifically, Plaintiff was employed by Defendant at its Austin, Texas office, and the alleged discriminatory conduct, including Plaintiff's termination, occurred in Austin, Texas.

5. Venue is proper in the United States District Court for the Western District of Texas, Austin Division, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims

4

occurred in Travis County, Texas, where Defendant maintains an office and where Plaintiff was employed and terminated.

### III. STATEMENT OF FACTS

6.    Plaintiff began employment with Defendant on or about August 15, 2022, as a Paralegal in the Intellectual Property Litigation practice.

7.    Plaintiff was recruited to Defendant by key attorneys with whom she had worked for over a decade. Her contributions were so valued by members of this team that the attorney had brought her along with the team's migrations through several of Austin's most elite law firms since 2009.

8.    Defendant recognized Plaintiff's experience and seniority at the time of hire by granting her ten years of seniority credit and offering a starting salary of $125,000. At the time of her termination, Plaintiff had received two consecutive merit-based salary increases, resulting in her final salary of $134,640.

9.    During 2023 and 2024, Plaintiff was entrusted as the lead paralegal on three back-to-back high-stakes and complex IP trials while managing the departure of her longtime assistant and training a new hire with no law firm experience.

10.    Plaintiff's performance in 2023 was rated as "exceeding expectations," and she was praised as an extremely experienced and organized litigation paralegal who excelled in trial support and was dedicated to

excellence. She was commended as being a team player and for being generous with her time.

11.    Plaintiff received a merit-based salary increase from $125,000 to $127,000 and a discretionary bonus of $11,000 for her 2023 performance.

12.    Plaintiff's 2024 annual evaluation was again filled with praise for her performance. Comments on the evaluation commended her knowledge and experience, resourcefulness, commitment to the team and her cases, and her can-do attitude. The only constructive criticism in the 2024 evaluation comments related to Plaintiff's tendency to take on too much work and suggested delegating more to her backups when her plate gets full.

13.    Plaintiff logged approximately 2,000 billable hours per year and realized collections on her time of $476,038 in 2023 and $565,698 in 2024.

14.    Defendant increased Plaintiff's salary to $134,640 based on her 2024 performance. She was also awarded a discretionary bonus of $5,280 and a supplemental bonus of $1,000, both based on her personal performance, among other factors.

15.    Despite the positive comments, Plaintiff received several numerical ratings of 2 ("Performance Met Some or Most Expectations") on her 2024 evaluation, including on four of six core competencies and her overall performance rating. Many of the numerical ratings are difficult, if not impossible, to square with the generally positive comments she received, such as receiving a 2 on 'Teamwork and Collaboration' while the comments praised

6

her for her can-do attitude, her regular offering of assistance to others, her ease to work with, her quickness to give her time to teach and lend a hand, and her commitment to her team and her cases.

16.     No meaningful explanation or basis for the low numerical ratings was provided in the evaluation or its comments.

17.     Upon receiving the 2024 evaluation on December 6, 2024, Plaintiff requested a meeting with her supervisor, Nikki Capitano, to discuss the evaluation. Based on information and belief, Plaintiff believes that Ms. Capitano is the individual ultimately responsible for assigning numerical values in evaluations.

18.     Plaintiff followed up on December 13, 2024, after receiving no response, and Ms. Capitano replied that she would put time on the calendar for a meeting.

19.     No meeting was scheduled by Ms. Capitano, and Plaintiff did not receive any further negative feedback between December 6, 2024, and March 3, 2025.

20.     On March 3, 2025, Plaintiff was informed by Ms. Capitano and Senior Human Resources Manager Nicole Clark that her employment was being terminated.

21.     Defendant stated that the decision to terminate Plaintiff was performance-based.

22. This explanation of "performance-based" termination does not line up with Plaintiff's history at Defendant. Plaintiff had not received any warnings, counseling, or performance improvement plans prior to her termination. Plaintiff had received a merit-based raise and bonus just months before her termination. In her more than sixteen years of service to the attorneys on Defendant's IP Litigation team, the only negative performance feedback to speak of was the handful of 2's given on her most recent evaluation without any explanation and in contradiction of the positive comments she received on the same evaluation.

23. Within days of Plaintiff's termination, Defendant posted an advertisement seeking to hire an IP Paralegal in the Austin office with at least four years of related work experience. This eliminates other alternative explanations the Defendant might offer for Plaintiff's termination, such as downsizing, reorganization, or the complete elimination of her position.

24. Plaintiff was 64 years old at the time of her termination and was turning 65 in August 2025.

25. Plaintiff had worked with the attorneys on Defendant's IP Litigation team for more than 15 years, including when they were at prior law firms.

26. Plaintiff's performance, as reflected in qualitative comments and merit-based raises and bonuses, remained high throughout her tenure.

27. Plaintiff did not resign or threaten to resign prior to her termination.

28. Plaintiff was never insubordinate.

29. In October 2024, Plaintiff's ability to perform her work was hampered by technical malfunctions outside her control, including a malfunctioning computer during a time-sensitive trial preparation.

30. Plaintiff immediately enlisted help from the Document Production team to ensure that urgent trial preparation tasks were completed despite her computer issues.

31. Plaintiff continued to work through the trial crunch and ensured that all required tasks were completed.

32. Plaintiff proactively addressed systemic file management issues at Defendant by opening a ticket with the Information Governance department in August 2024 to bring her team into compliance with firm policy.

33. Plaintiff requested documentation from Information Governance to clarify that client files needed to be stored in iManage, as many attorneys and staff were under the impression that OneDrive was the correct repository.

34. Plaintiff expressed her intention to have all her case files copied to iManage in accordance with firm policy and sought to educate her colleagues about the correct procedures.

35. Plaintiff did not receive any documentation of serious complaints or counseling regarding her performance prior to her termination.

36.    Plaintiff was replaced or intended to be replaced by someone with at least four years of experience, as indicated by Defendant's job posting.

## IV. CAUSES OF ACTION

### COUNT 1
### Age Discrimination
### (Texas Commission on Human Rights Act, Tex. Labor Code § 21.051 *et seq.*)

38. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 37, as if fully set forth herein.

39. Plaintiff is a member of the protected class under the Texas Commission on Human Rights Act, as she was 64 years old at the time of her termination and thus over the age of 40. Defendant was aware of Plaintiff's age during her employment and at the time of her termination.

40. Plaintiff was qualified for her position as an Intellectual Property Litigation Paralegal, as evidenced by her extensive experience, positive performance evaluations, merit-based salary increases, and the fact that she was repeatedly recruited and retained by Defendant's attorneys for her expertise and contributions across multiple firm charges.

41. Plaintiff suffered an adverse employment action when Defendant terminated her employment on March 3, 2025.

42. Plaintiff was replaced by someone significantly younger or, in the alternative, was treated less favorably than similarly situated younger employees. Defendant posted a job advertisement for an Intellectual Property

Paralegal with a minimum of four years' experience shortly after Plaintiff's termination, indicating intent to replace Plaintiff with a younger candidate.

43. Plaintiff timely filed a charge of discrimination with the Texas Workforce Commission and the EEOC, providing sufficient factual detail regarding the date, place, and circumstances of the alleged discrimination to put Defendant on notice of the claims.

44. As a direct and proximate result of Defendant's unlawful age discrimination, Plaintiff has suffered and continues to suffer damages, including but not limited to lost wages, lost benefits, emotional distress, and other compensatory damages in an amount within the jurisdictional limits of the Court.

45. Defendant's conduct was willful and in reckless disregard of Plaintiff's rights under the Texas Commission on Human Rights Act, entitling Plaintiff to all available legal and equitable remedies, including but not limited to reinstatement, back pay, front pay, compensatory damages, and punitive damages as allowed by law.

46. Plaintiff is entitled to recover reasonable and necessary attorneys' fees and costs incurred in the prosecution of this action, as provided by law.

## COUNT 2
### Age Discrimination
### (Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.)

47. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 46, as if fully set forth herein.

11

48.    Plaintiff is a member of the protected class under the ADEA, as she was 64 years old at the time of her termination. Defendant was aware of Plaintiff's age and employed Plaintiff until the time of her termination.

49.    Plaintiff was qualified for her position as an Intellectual Property Litigation Paralegal, as evidenced by her extensive experience, positive performance evaluations, and merit-based raises and bonuses.

50.    Plaintiff suffered an adverse employment action when Defendant terminated her employment on March 3, 2025.

51.    Plaintiff was replaced by someone significantly younger, or otherwise treated less favorably than similarly situated younger employees. Defendant posted a job advertisement seeking to hire a replacement with at least four years' experience, indicating intent to replace Plaintiff with a younger candidate.

52.    As a result of Defendant's conduct, Plaintiff has suffered damages including lost wages, lost benefits, emotional distress, and other compensatory damages.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Sonja Guenter respectfully requests that Defendant McDermott Will & Schulte LLP be cited to appear and answer herein, and that upon a final hearing of this matter, the Court enter judgment in favor of Plaintiff Sonja Guenter and against Defendant McDermott Will & Schulte LLP, and award to Plaintiff Sonja Guenter the following relief:

12

1. Declare that Defendant McDermott Will & Schulte LLP violated the Texas Commission on Human Rights Act, Tex. Labor Code § 21.051 et seq., by discriminating against Plaintiff Sonja Guenter on the basis of age in connection with her employment and termination.

2. Enjoin Defendant McDermott Will & Schulte LLP from engaging in further acts of age discrimination in violation of the Texas Commission on Human Rights Act.

3. Award Plaintiff Sonja Guenter all actual damages, including but not limited to back pay, lost wages, lost benefits, and front pay or reinstatement, in an amount to be determined at trial, as a result of Defendant McDermott Will & Schulte LLP's unlawful conduct.

4. Award Plaintiff Sonja Guenter compensatory damages for emotional distress and other non-economic harm suffered as a result of Defendant McDermott Will & Schulte LLP's unlawful conduct, in an amount to be determined at trial.

5. Award Plaintiff Sonja Guenter punitive damages as permitted by law for Defendant McDermott Will & Schulte LLP's willful and reckless disregard of Plaintiff's rights under the Texas Commission on Human Rights Act.

6. Award Plaintiff Sonja Guenter her reasonable and necessary attorneys' fees, expert witness fees, and costs of court as provided by Tex. Labor Code § 21.259 and other applicable law.

7. Award Plaintiff Sonja Guenter prejudgment and post-judgment interest at the maximum rate allowed by law.

8. Grant such other and further relief to which Plaintiff Sonja Guenter may be entitled at law or in equity.

Dated: March 19, 2026

Respectfully submitted,

/s/ *Holt Major Lackey*
Holt Major Lackey
State Bar No. 24047763
holt@holtmajorlackey.com

Amaris Isabel Diaz
State Bar No. 24144444
amaris@holtmajorlackey.com

**HOLT MAJOR LACKEY, PLLC**
111 W. Anderson Ln., Ste. D-211
Austin, TX 78752
Telephone: (512) 949-9598

**COUNSEL FOR PLAINTIFF
SONJA GUENTER**

14